IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **AMBER MARIE TATTRIE,** | ) |
| | ) |
| Plaintiff, | ) Case No. 7:23-cv-079 |
| | ) |
| v. | ) By:   Michael F. Urbanski |
| | ) Chief United States District Judge |
| **CEI-ROANOKE, LLC d/b/a** | ) |
| **VOYANT BEAUTY,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on a Partial Motion to Dismiss, ECF No. 4, filed by defendant CEI-Roanoke, LLC doing business as Voyant Beauty ("Voyant"). Among other claims, Plaintiff Amber Tattrie ("Tattrie") alleges that Voyant engaged in discrimination in violation of the Virginia Human Rights Act ("VHRA") (Count Two), Va. Code Ann. § 2.2-3905, and wrongful termination in violation of public policy under Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985) (Count Five). Compl., ECF No. 1. Voyant seeks to dismiss these both Counts. ECF No. 4.

For the foregoing reasons, Voyant's Partial Motion to Dismiss, ECF No. 4, is **GRANTED**. Count Two is dismissed without prejudice and Count Five is dismissed with prejudice.

## I.

Amber Tattrie began working as a third shift production supervisor at Voyant's Roanoke location on July 12, 2021. Compl., ECF No. 1, at ¶¶ 8, 31. Over the first few weeks, Tattrie appeared to develop a positive relationship with Voyant's Human Resources ("HR")

1

manager, Bridgett Farmer. Id. at ¶¶ 34–35. Then, Farmer learned that Tattrie was a lesbian when Tattrie's mother—also employed by Voyant—mentioned Tattrie's ex-wife. Id. at ¶ 36–37.

From that point onward, Farmer and Tattrie's relationship soured. Id. at ¶ 38. The Complaint describes several negative interactions between the two, id. at ¶¶ 39–53, an incident in which another lesbian employee was not promoted because Farmer suspected that employee was in a relationship with Tattrie, id. at ¶¶ 56–59, multiple complaints about Farmer's treatment of LGBTQ+ individuals to Voyant's HR hotline and Tattrie's supervisor, id. at ¶¶ 62–64, 69–70, and Farmer's refusal to hire individuals suggested by Tattrie, id. at ¶¶ 65–67, 71.

In April 2022, Tattrie contracted COVID-19. Id. at ¶ 72. While Tattrie had received approval to work remotely from her direct supervisor and Farmer had permitted heterosexual employees to work remotely after contracting COVID-19, Farmer prohibited Tattrie from teleworking while sick and required Tattrie to either report to work in-person or take personal leave. Id. at ¶¶ 74–81. Tattrie lodged complaints about this differential treatment with both her direct supervisor and Voyant's HR hotline. Id. at ¶¶ 82–84. On Tattrie's first day back—four days following this second HR hotline report—Farmer terminated Tattrie. Id. at ¶¶ 87–92. While Farmer called this a "reduction in force" and not a termination for cause, Tattrie believed it to be motivated by animus toward Tattrie's sexual orientation. Id. at ¶¶ 94–102.

Tattrie filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2022, alleging sex-based discrimination and retaliation. Id. at ¶ 13. On

January 27, 2023, the EEOC issued a Notice of Right to Sue. Id. at ¶ 16. Tattrie filed this suit on February 6, 2023.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Invest., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or

unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "'Thus, in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of the allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may consider documents outside of the amended complaint if they are "integral to the Complaint" and there is no dispute regarding their authenticity. Goines v. Valley Comm. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the Complaint" where the Complaint "relies heavily upon its terms and effect . . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### III.

Voyant seeks to dismiss both Count Two, which alleges discrimination in violation of the VHRA, and Count Five, which alleges a Bowman claim for a termination in violation of a stated Virginia public policy.

**A. Claim Two: Discrimination in Violation of the VHRA**

4

Tattrie claims that Voyant violated § 2.2-3905(B) of the VHRA by discriminating against her because of her sexual orientation. Compl., ECF No. 1, at ¶¶ 120–23. Voyant moves to dismiss this claim because Tattrie failed to exhaust her state administrative remedies or obtain a right-to-sue notification directly from the VHRA. Def.'s Mem. Supp., ECF No. 5, at 5–6.

Title VII and the current iteration of the VHRA both prohibit employment discrimination and provide similar complaint-filing procedures. 42 U.S.C. §§ 2000e-2, 2000e-5; Va. Code Ann. §§ 2.2-3905, 3907 (2021). Under Title VII, an aggrieved person must file a charge with the EEOC within 180 days of the allegedly unlawful employment practice before filing a complaint in court. 42 U.S.C. § 2000e-5(b), (e)(1). Likewise, under state law, anyone "claiming to be aggrieved by unlawful discrimination" in violation of the VHRA must file a complaint within 180 days of the challenged employment action with the VOCR. Va. Code Ann. § 2.2-3907(A) (2021); 1 Va. Admin. Code § 45-20-30(D). Upon receipt of a complaint, both agencies are to notify the employer and begin an investigation. 42 U.S.C. § 2000e-5(b); Va. Code Ann. §§ 2.2-3907(B), (D) (2021). A complainant is generally entitled to a right-to-sue notice from the agency with which the complaint was filed 180 days after filing. 42 U.S.C. § 2000e-5(f)(1); Va. Code Ann. § 2.2-3907(H) (2021); 1 Va. Admin. Code § 45-20-87.[1]

---

[1] This VHRA procedure is relatively new. Virginia significantly amended the VHRA in 2020. 2020 Va. Acts 1140. Under the pre-2020 VHRA, a discharged employee was not required to file with the VOCR at all, let alone await a right-to-sue notice from the agency. Va. Code. Ann. § 2.2-3903 (2019). If the discharged employee did choose to file with the state agency, they were required to file suit within ninety days of the agency's final disposition on the complaint. Id. Tattrie relies on pre-2020 cases for the proposition that filing an EEOC charge not only initiated her VOCR charge but also exhausted her state remedies. Pl.'s Mem. Opp'n, ECF No. 7, at 7 (citing, for example, Bolinsky v. Carter Mach. Co., 69 F. Supp. 2d 842, 846–47 (W.D. Va. 1999)). With the enactment of a more robust VHRA process, this caselaw no longer applies.

These federal and state processes intersect through worksharing agreements. Under the worksharing agreement reached in Fiscal Year 2021, "the EEOC's receipt of charges on [VOCR]'s behalf will automatically initiate the proceedings of both the EEOC and the [VOCR] for the purposes of Section [2000e-5](c) and (e)(1)." Worksharing Agreement, ECF No. 12-1;[2] see also Fort Bend Cnty., Texas v. Davis, 139 S. Ct. 1843, 1846 (2019) ("If the state or local agency has a 'worksharing' agreement with the EEOC, a complainant ordinarily need not file separately with federal and state agencies. She may file her charge with one agency, and that agency will then relay the charge to the other."); Puryear v. Cnty. of Roanoke, 214 F.3d 514, 519 (4th Cir. 2000) ("Thus, under the express terms of [the Worksharing Agreement], a plaintiff, by filing charges with the EEOC, thereby commences proceedings with both the [VOCR] and the EEOC.").

However, just because a complainant may _initiate_ the VOCR process by filing with the EEOC, does not mean that the EEOC's right-to-sue notification also permits an individual to _file suit_ under the VHRA. Instead, the federal and state processes run in parallel. The VHRA only permits an individual "who has been provided a notice of his right to file a civil action pursuant to § 2.2-3907" to bring a civil suit under the VHRA. Va. Code Ann. § 2.2-3908 (2021). Section 2.2-3907 refers only to a right-to-sue notice issued by "the Office" of Civil Rights, or VOCR. Va. Code Ann. § 2.2-3907 (2021). There is no ambiguity in this statutory text: only the state agency can notify a complainant of their right to sue under state law. The EEOC lacks such authority.

---

[2] The Fiscal Year 2021 Worksharing Agreement was extended for Fiscal Years 2022 and 2023. ECF Nos. 12-2; 12-3.

This result comports with the decisions reached by the two other federal courts to have considered this question. See Jordan v. School Board of City of Norfolk, No. 2:22CV167, — F.Supp.3d —, —, 2022 WL 16835868, at *11–13 (E.D. Va. Nov. 9, 2022) (dismissing a VHRA claim where the plaintiff had obtained a right-to-sue notice from the EEOC, but not the VOCR); Moss v. Saja Rest. Grp., LLC, No. 5:22-CV-00014, — F.Supp.3d —, —, 2023 WL 3034605, at *11–12 (W.D. Va. Apr. 21, 2023) (same). As noted in Jordan, federal courts sitting in other states with similar laws and EEOC workshare agreements have also concluded that an EEOC right-to-sue notice does not confer a right to sue under state law. 2022 WL 16835868, at *12–13 (collecting cases).

Further, this result is supported by analogous state cases, which emphasize that the EEOC and VOCR processes are separate. In Parikh-Chopra v. Strategic Management Services, LLC, 109 Va. Cir. 155 (2021), the court considered whether a plaintiff who had filed charges with both the EEOC and VOCR must include with her pleadings a copy of the VOCR charge, stating:

> [T]he EEOC complaint is dispensed with as irrelevant to this action. EEOC complaints are pursued under federal law. A plaintiff who exhausts her administrative appeals in the EEOC is entitled to bring a lawsuit in federal court. The Virginia statutory scheme does not recognize the exhaustion of a complaint before a federal agency as a precondition to bringing a civil action in a Virginia state court.

Id. at *2. Instead, "only the presentment of claims and the exhaustion of the administrative remedies before the [VOCR] satisfy the prerequisite to filing a discrimination lawsuit in Virginia's state courts." Id.; see also Patel v. The Commonwealth of Va., No. CL21-6527, 2021 WL 2808929, at *3 (Va. Cir. Ct. July 2, 2021) (noting that "authorization to commence a civil

7

[VHRA] action hinges upon the completion of an administrative process <u>by the commonwealth</u>") (emphasis added).

Tattrie's VHRA claim fails because Tattrie has not obtained a right-to-sue notice from the VOCR, as required by Virginia Code § 3908. The court **GRANTS** the motion to dismiss as to Count Two without prejudice, permitting permit Tattrie the opportunity to request a right-to-sue notice from the VOCR.[3]

### B. Claim Five: <u>Bowman</u> Claim

Voyant argues that <u>Bowman</u> claims for wrongful termination are "not viable where they are predicated upon a statute for which the legislature has already created a cause of action to enforce the public policy violation at issue." Def.'s Mem. Supp., ECF No. 5, at 2. Because the VHRA already vindicates the public policy against discrimination against LGBTQ+ individuals, Voyant argues that Tattrie's <u>Bowman</u> claim must be dismissed. <u>Id.</u>

A <u>Bowman</u> claim "allows an at-will employee to bring a tortious wrongful discharge claim if the termination violates Virginia public policy as expressed in a Virginia statute." <u>Hice v. Mazzella Lifting Techs., Inc.</u>, 589 F. Supp. 3d 539, 550 (E.D. Va. 2022) (citing <u>Bowman</u>, 229 Va. at 540, 331 S.E.2d at 801).

> In Virginia, a common law claim for wrongful discharge may be brought only under one of three circumstances: (1) "an employer violated a policy enabling the exercise of an employee's statutorily created right;" (2) "the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy;" or (3) "the employee's refusal

---

[3] "Upon receipt of a written request from the complainant, the Office shall promptly issue a notice of the right to file a civil action to the complainant after (i) 180 days have passed from the date the complaint was filed . . . ." Va. Code. Ann. § 2.2-3907(H) (2021); <u>see also</u> Va. Admin. Code § 45-20-87.

> to engage in a criminal act." Rowan v. Tractor Supply Co., 263 Va. 209, 213–14, 559 S.E.2d 709, 710–11 (2002).

Hice, 589 F. Supp. 3d at 550–51. Here, in addition to bringing a claim under the VHRA, Tattrie makes a common law Bowman claim based on the VHRA's public policy against sex discrimination. Va. Code Ann. § 2.2-3900(B) (stating the Commonwealth's policy against "unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, sexual orientation, gender identity, military status, or disability").

The VHRA has undergone several substantial revisions since its original enactment in 1987. For the purposes of determining whether a plaintiff may premise a Bowman claim on an alleged VHRA violation, three time periods are relevant: pre-1995; 1995–2020; and post-2020.

From its enactment in 1987 through its amendment in 1995, the VHRA did not provide a private right of action. See Va. Code Ann. §§ 2.1-714–2.1-725 (1987). Indeed, during this period, § 2.1-725 provided that "nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions." Against this backdrop, the Virginia Supreme Court held that the Bowman exception to the at-will employment doctrine "includes instances where . . . employees are terminated because of discrimination" based on the VHRA's public policies. Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 105–06, 439 S.E.2d 328, 331–32 (1994).

The 1995 amendments made two important additions to § 2.2-725. See 1995 Va. Acts 838. First, the legislature added a private right of action, permitting the injured employee to "bring an action in a general district or circuit court having jurisdiction over the employer who

9

allegedly discharged the employee in violation of this section." Va. Code Ann. § 2.2-725(B) (1995). Second, the legislature added what Tattrie calls the Preclusion Provision: "Causes of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances." Va. Code Ann. § 2.2-725(D) (1995).

In <u>Doss v. Jamco, Inc.</u>, 254 Va. 362, 370, 492 S.E.2d 441, 445 (1997), the Virginia Supreme Court held that, in adding § 2.1-725(D), "the General Assembly plainly manifested an intent to abrogate the common law with respect to causes of action for unlawful termination of employment based upon the public policies reflected in the Act." From 1995 onward, courts consistently held that <u>Bowman</u> claims could not be predicated on the VHRA. <u>Hice</u>, 589 F. Supp. 3d at 551–52 (collecting cases).

Eventually, what had been codified at § 2.1-725 (1995) was moved to § 2.2-3903 (2012). <u>See</u> 2012 Va. Acts 803; 2001 Va. Acts 844. The text of this provision was subject to only minor amendments from 1995 to 2020.

In 2020, the General Assembly overhauled the VHRA. 2020 Va. Acts 1140. While the General Assembly repealed § 2.2-3903, it did not eliminate a private right of action for VHRA claims. <u>Id.</u> Instead, the General Assembly added §§ 2.2-3907 and 2.2-3908, which, as described above, provide extensive procedures mandating that an aggrieved employee must first file a complaint with the VOCR and then, after receiving a right-to-sue notice from the agency, permitting them to file a civil suit in a court of competent jurisdiction. <u>Id.</u>

Tattrie argues that the repeal of § 2.2-3903—and therefore the repeal of the Preclusion Provision—"returned the situation to the status that existed prior to 1995: behavior actionable

10

under the VHRA may also serve as the predicate to a common law Bowman claim." Pl.'s Mem. Opp'n, ECF No. 7, at 3–4. But the 2020 amendments do not return the VHRA to its pre-1995 state, in which there was no private right of action. Instead, the current VHRA provides for an administrative process followed by a private right of action. "One of the basic principles of statutory construction is that where a statute creates a right and provides a remedy for the vindication of that right, then that remedy is exclusive unless the statute says otherwise." Sch. Bd. of City of Norfolk v. Giannoutsos, 238 Va. 144, 147, 380 S.E.2d 647, 649 (1989). Numerous Virginia courts have found that "statutes containing their own remedy cannot also support a Bowman claim." Carmack v. Virginia, No. 1:18-CV-00031, 2019 WL 1510333, at *13 (W.D. Va. Apr. 5, 2019) (collecting cases).

As the court concluded in Hice, Tattrie "cannot work around the structure, limitations, and remedies of the VHRA by bringing a related Bowman claim. The VHRA prescribes an extensive remedial scheme that employees must follow when relying on the rights and policies articulated in the Act." 589 F. Supp. 3d 553. Allowing the Bowman claim to proceed would undermine the administrative process outlined in the 2020 amendments.

"[R]emoving the § 2.2-3903 language does not automatically allow Bowman claims, when the VHRA articulates its own cause of action and remedy." Id. at 554. Therefore, the court **GRANTS** the motion to dismiss Count Five with prejudice.

**IV.**

For the aforementioned reasons, the court **GRANTS** defendant's Partial Motion to Dismiss, ECF No. 4. Count Two is dismissed without prejudice and Count Five is dismissed with prejudice.

11

It is **SO ORDERED**.

Entered: June 20, 2023

Michael F. Urbanski
Chief U.S. District Judge
2023.06.20 17:26:18
-04'00'

Michael F. Urbanski
Chief United States District Judge

12